IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>SIDELINES TREE SERVICE, LLC, AND; JOSEPH ZAWACKI, ADAM YOKIM, CASEY BONINCONTRO, STEPHANIE BONINCONTRO,<br><br>Defendants, | Civil Action No. 2:22-CV-01283-CBB<br><br>United States Magistrate Judge Christopher B. Brown |

**MEMORANDUM OPINION**
**ON MOTIONS FOR SUMMARY JUDGMENT ECF Nos. 70 and 72**

### I. Introduction

National Liability & Fire Insurance Company ("National") provided an automobile insurance policy to Defendant Sidelines Tree Service, LLC ("Sidelines"). National brought this action in which it seeks a declaration that it has no obligation to defend or indemnify Defendants Sidelines, its employees Joseph Zawacki, Adam Yokim, or its owners Casey and Stephanie Bonincontro (collectively, the "Bonincontros") related to two underlying state court lawsuits arising from an injury sustained by Defendant Zawacki during a tree removal job (the "Accident"). This court has subject matter jurisdiction under 28 U.S.C. § 1332.

Presently pending before the Court are Cross-Motions for Summary Judgment filed by National and Defendants Sidelines, Yokim, and the Bonincontros

respectively.[1]  ECF Nos. 70, 72.  The Motions are fully briefed and ripe for consideration.  ECF Nos. 69-89.

Based on the following, National's Motion will be GRANTED, and Defendants' Motion will be DENIED.

## II.   Background

### a.  The Underlying Lawsuit and Accident

The following facts are not in dispute unless otherwise noted.  The Accident occurred on October 27, 2021.  On that day, Sidelines had been hired to remove four trees from a residence in Bridgeville, Pennsylvania.  ECF No. 69 at ¶ 20.  Zawacki,[2] Yokim, and Casey Bonincontro drove Sidelines-owned equipment to the worksite, including a Freightliner truck and a stump grinder.  *Id.* at ¶¶ 21-22, 24.  Stephanie Bonincontro was not at the worksite.  *Id.* at ¶ 23.

---

[1]     Defendant Zawacki did not file a motion for summary judgment but rather filed a response in opposition to National's Motion.  ECF No. 76.

[2]     The Parties take inconsistent positions on whether Zawacki was a Sidelines employee on the date of the Accident – National maintains Zawacki was a Sidelines employee, Zawacki maintains he was not, and Sidelines takes contradicting positions in its brief and in its Statement of Material Facts.  ECF No. 71 at 2-3; ECF No. 73 at 5; ECF No. 79 at 6; ECF No. 74 at ¶ 15.  The Parties do not dispute that: Sidelines was hired to remove the trees the day of the Accident (ECF No. 69 at ¶ 20); Zawacki applied to work at Sidelines (*Id.* at ¶ 5); Casey Bonincontro interviewed Zawacki (*Id.* at ¶ 6); Zawacki started working with Sidelines in 2012 (*Id.* at ¶ 7); Zawacki worked full-time at Sidelines (*Id.* at ¶¶ 11, 14); Zawacki worked on the tree and grass cutting crews (*Id.* at ¶ 15); Sidelines trained Zawacki on how to use its equipment (*Id.* at ¶ 17); Zawacki used Sidelines-owned equipment; (*Id.* at ¶ 16); Zawacki drove Sidelines-owned equipment and machinery to worksites (*Id.*); Sidelines paid Zawacki as a W-2 employee (*Id.* at ¶ 8); Zawacki filed his W-2 form with his federal taxes (*Id.* at ¶ 9); Sidelines increased his hourly wage the longer he worked with Sidelines; (*Id.* at ¶ 13); Zawacki received a Sidelines employee handbook (*Id.* at ¶ 10); Zawacki completed safety trainings and signed each certification as a Sidelines employee (*Id.* at ¶ 18).  In its Requests for Admission, Sidelines stated that Zawacki was a Sidelines employee, ECF No. 69-6 at 1, which Sidelines reiterated in its Statement of Material Facts.  ECF No. 74 at ¶ 15.

Before the Accident, Zawacki parked the Freightliner on a hill and walked in front of it.  ECF No. 69. at ¶ 24.  At some point after doing so, the Freightliner rolled forward and crushed Zawacki between it and the stump grinder.[3]  *Id*. at ¶ 26.  Yokim[4] and Casey Bonincontro created a tree bark tourniquet to stop Zawacki's leg from bleeding, which Zawacki says caused him an infection.  *Id*. at ¶ 30.  Zawacki suffered bilateral leg fractures, a fractured sternum, multiple rib fractures, multiple skull and/or facial fractures, injuries to his hips, and an infection in his lower extremities.  ECF No. 78 at ¶ 9.

As a result of the Accident, Zawacki brought a personal injury lawsuit in the Allegheny County Court of Common Pleas at GD No. 23-006807 (the "First Underlying Lawsuit") against Sidelines, Yokim, and the Bonincontros alleging negligence and that the Bonincontros fraudulently represented that Sidelines carried workers' compensation coverage.  Zawacki is seeking both compensatory and punitive relief.  *Id* at 19.  Zawacki filed a second civil complaint (the "Second Underlying Lawsuit") against Sidelines and defendants allegedly involved in the

---

[3]   The Parties debate who, if anyone, was in the Freightliner at the time it pinned Zawacki.  National takes no position on the driver.  ECF No. 88 at 2.  Zawacki alleges that a "migrant worker" may have caused the Freightliner to move.  ECF No. 79 at 5.  The remaining Defendants simply say that there was "varying testimony" about who could have been in the Freightliner.  ECF No. 84 at 3.

[4]   The Parties also dispute whether Defendant Yokim was a Sidelines employee.  ECF No. 74 at ¶ 16.  The Parties do not dispute the following: Yokim approached Defendant Casey Bonincontro directly for a job with Sidelines (ECF No. 69. at ¶ 34); Yokim began working with Sidelines in September 2021 (*Id*. at ¶ 33); Yokim was supervised by a Sidelines employee (*Id*. at ¶ 36); Yokim received a Sidelines employee handbook (*Id*. at ¶ 38); Sidelines paid Yokim twice a month by either cash or check (*Id*. at ¶ 39); Sidelines trained Yokim on safety and how to use the equipment (*Id*. at ¶ 41); Yokim used Sidelines tree-cutting equipment and drove Sidelines' trucks (*Id*. at ¶ 40); and Yokim ultimately was a W-2 employee (*Id*. at ¶ 43).

manufacture and inspection of the Freightliner truck which rolled into and seriously injured him.

### b. Background – The National Policy

National issued a business auto policy (# 73 APB 004638) for the period of April 1, 2021-April 1, 2022 to the named insured Sidelines Tree Service, LLC (the "National Policy"). *See* ECF No. 69-1.

The National Policy covers:

> **SECTION II- LIABILITY COVERAGE**
> **A. Coverage**
> We will pay all sums an "insured" legally must pay because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
>
> . . .
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages . . . However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply.

*Id.* at 19. The named insured is Sidelines, and the named insured is also referred to as "You." *Id.* at 17-18.

The National Policy provides coverage for:

> 1. Who is An Insured
> The following are "insureds":
> a. You for any covered "auto".
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow. . .
>
>  . . .

4

> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

*Id.* at 19-20. The relevant exclusions include:

> **B. Exclusions**
>
> This insurance does not apply to any of the following: . . .
>
> **3. Workers' Compensation**
>
> Any obligation for which the "insured" or the "insured's" insurer may be held liable under any worker's compensation, disability benefits or unemployment compensation law or any similar law.
>
> **4. Employee Indemnification And Employer's Liability**
>
> "Bodily injury" to:
>
>> a. An "employee" of the "insured" arising out of and in the course of:
>>
>>> (1) Employment by the "insured"; or
>>>
>>> (2) Performing the duties related to the conduct of the "insured's" business; or
>
> . . .
>
> This exclusion applies:
>
>> (1) Whether the "insured" may be liable as an employer or in any other capacity; and
>>
>> (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury. . .
>
> **5. Fellow Employee**
>
> "Bodily injury" to:
>
>> a. any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business;

*Id.* at 20-21.

### III. Standard of Review

5

The standard for assessing motions for summary judgment is well-settled. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *Id.*

The summary judgment standard "does not change when the issue is presented in the context of cross-motions for summary judgment." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citing *Applemans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). When both parties move for summary judgment, the court "must rule on each party's motion on an individual and separate basis," determining "whether a judgment may be entered in accordance with the Rule 56 standard." *Id.* (citing 10A Charles Alan Wright, et al., *Federal Practice & Procedure* § 2720 (3d ed. 2016)).

## IV. Discussion

The Parties do not dispute that Pennsylvania law applies. In an insurance coverage dispute, the insured has the "burden to show that its claims are covered under the policy." *Cmty. Bank v. Fid. Nat'l Title Ins. Co.*, 550 F.Supp. 3d 244, 255 (W.D. Pa. 2021). The insurer "bears the burden of proving the applicability of any exclusions or limitations on coverage." *Zurich Am. Ins. Co. v. Century Steel Erectors Co., L.P.,* 613 F. Supp. 3d 896, 903 (W.D. Pa. 2020) (quoting *Koppers Co., Inc. v. Aetna Cas. & Surety Co.,* 98 F.3d 1440, 1447 (3d Cir. 1996)).

Interpreting an insurance contract is a question of law. *Gen. Refractories Co. v. First State Ins. Co*, 855 F.3d 152, 158 (3d Cir. 2017) (quoting *Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 154-55 (Pa 2007)). A court must read the policy "as a whole" and give its terms their "plain meaning." *Slaughter v. Charter Oak Ins. Co.,* No. 22-2179, 2024 WL 2182826, at *3 (3d Cir. May 15, 2024). "Ambiguous policy language is construed in favor of the insured." *Keahy v. Federated Life Ins. Co.*, No. 21-3287, 2022 WL 17424297, at *2 (3d Cir. Dec. 6, 2022).

National is seeking a declaration that it does not have a duty to defend or indemnify the Defendants for either the Accident or the events in the Underlying Complaints.[5] National's duty to each of the Defendants is examined in turn.

---

[5] National is seeking declarations that: 1. National has no duty to defend or indemnify Sidelines for the Accident or Underlying Complaints under the Employee Indemnification Exclusion; 2. National has no duty to defend or indemnify Sidelines for the Accident or the Underlying Complaints under the Worker's Compensation Exclusion;  3. National has no duty to defend or indemnify Yokim for the Accident or the First Underlying Complaint under the Fellow Employee Exclusion;  4. National has no duty to defend or indemnify Casey Bonincontro for the Accident or the First Underlying Complaint because he does not qualify as an "insured" under the Policy;  5. National has no duty to defend or indemnify Stephanie Bonincontro for the Accident or First

### a. Coverage for Sidelines[6]

Highlighting two exclusions, National seeks a declaratory judgment that it does not have a duty to defend or indemnify Sidelines for Zawacki's injuries.

### i. Employee Indemnification and Employer's Liability Exclusion

National first argues that the Employee Indemnification and Employer's Liability Exclusion ("Employee Indemnification Exclusion") bars coverage for Sidelines related to Zawacki's injuries. ECF No. 71 at 7. National argues that there is no coverage because Zawacki was a Sidelines employee and his "bodily injury . . . arises out of and in the course of his employment." *Id.* (citing ECF No. 69-1 at 21). Defendants respond there is a genuine issue of fact as to whether Zawacki was an employee because Sidelines did not have worker's compensation coverage at the time of the Accident. ECF No. 79 at 6; ECF No. 84 at 3.[7]

Whether a person is an employee is a question of law for the court. *See Est. of Accurso v. Infra-Red Servs., Inc.*, 805 F. App'x 95, 101 (3d Cir. 2020); *Razak v.*

---

Underlying Complaint because she does not qualify as an "insured" under the Policy; 6. National has no duty to indemnify the Bonincontros for damages, if any, arising from allegations of fraudulent misrepresentation; 7. National has no duty to indemnify Casey Bonincontro or Yokim for damages, if any, arising from either's use of a tourniquet; 8. National has no duty to indemnify Sidelines, Yokim, or the Bonincontros for any punitive damages awarded in the Underlying Complaints; 9. National has the right to withdraw from the defense of Sidelines, Yokim, and the Bonincontros, in the Underlying Complaints; and 10. National has a right to recoup defense costs incurred in defense of the Underlying Complaints in accordance with the Policy terms. ECF No. 71 at 19-21.

[6]     Sidelines' affirmative arguments for coverage are not clear. Sidelines appears to argue that it is entitled to coverage because Sidelines is a named insured, the Freightliner is a covered auto, and the Accident occurred while "using with your permission a covered" auto. ECF No. 73 at 3-4. However, as Sidelines itself acknowledges in its Brief, coverage is subject to certain exclusions in the National Policy. *Id.* Sidelines' counterarguments for the exclusions are discussed below.

[7]     Courts in this Circuit find identical exclusions to be unambiguous. *Empire Fire & Marine Ins. Co. v. Jones*, 739 F. Supp. 2d 746, 754 (M.D. Pa. 2010) (finding that an identical exclusion is "not ambiguous"); *Landmark Motorcars*, 1998 WL 967375, at *5 (same).

*Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir.), *amended*, 979 F.3d 192 (3d Cir. 2020). In Pennsylvania, a key characteristic of an employer/employee relationship is "that the [employer] not only controls the result of the work but has the right to direct the way in which it shall be done." *Empire Fire & Marine Ins. Co. v. Landmark Motorcars*, No. 97-7335, 1998 WL 967375, at *5 (E.D. Pa. Nov. 30, 1998). When determining employment status in the context of an employee indemnification exclusion, courts also look at: "[c]ontrol of manner work is to be done; responsibility for result only; terms of the agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time." *Landmark Motorcars*, 1998 WL 967375, at *5 (citing *Hammermill Paper Company v. Rust Engineering Company*, 430 Pa. 365, 370 (Pa. 1968)). *See also White v. Beaver Cnty.*, No. 2:17-CV-00998, 2019 WL 479072, at *4 (W.D. Pa. Feb. 7, 2019) (applying same test in analysis under Pennsylvania County Pension law).

Applying these factors, it is clear Zawacki was a Sidelines employee.[8] Sidelines directed Zawacki's work because it was Sidelines (not Zawacki himself) who was hired to cut trees, and Zawacki used Sidelines-owned equipment at

---

[8] Zawacki was also acting in the course of his employment at the time of the Accident. Zawacki drove Sidelines' equipment to the worksite and was working alongside other Sidelines employees. *Id.* at ¶ 22. *See Landmark Motorcars*, 1998 WL 967375, at *6 (finding the injury arose in the course of his employment because it happened while he was at employer's car dealership).

9

Sidelines' worksites under the supervision of a Sidelines manager. ECF No. 69 at ¶¶ 16, 20. Zawacki's work was part of Sideline's regular business. *Id.* at ¶ 2. He worked full-time for Sidelines for nine years and Sidelines paid him as a W-2 employee. *Id.* at ¶¶ 11, 14. The longer he worked with Sidelines, the more he was paid. *Id.* at ¶ 13. Sidelines trained him on the business and its equipment, and Zawacki signed his training certifications as a Sidelines employee. *Id.* at ¶¶ 10, 17. In its Requests for Admission, Sidelines itself stated that Zawacki was its employee, ECF No. 69-6 at 1, which Sidelines reiterated in its Statement of Material Facts. ECF No. 74 at ¶ 15. *See also Landmark Motorcars,* 1998 WL 967375, at *6 (designating someone an employee where "[t]here is no question" that his work was part of the company's regular business, and all materials were company-provided).

The only contrary fact Defendants point to is that Sidelines did not have workers' compensation coverage. ECF No. 79 at 6; ECF No. 84 at 3.[9] Another court

---

[9] Defendants also argue that summary judgment should be granted in their favor because there is a genuine question of material fact as to who, if anyone, was driving the Freightliner at the time of the Accident. ECF No. 84 at 3; ECF No. 79 at 5. This argument is unpersuasive for two reasons. **First**, Zawacki was injured, and his employment status does not change regardless of whether someone was driving the Freightliner and whether that person was an employee. **Second**, deposition testimony undercuts Defendants' attempt to argue that a "migrant worker" (and therefore not an employee) was driving the Freightliner. A key characteristic of an employer/employee relationship is that the employer "controls the result of the work" and "has the right to direct the way in which it shall be done." *Landmark Motorcars*, 1998 WL 967375, at *5. Zawacki said the workers were either part of his "regular crew" or that he had worked with them multiple times before the Accident. ECF No. 78-2 at 47:9-48:5. Zawacki was the foreman, so he "ran the job" and directed the crew on what to do at the worksite. *Id.* at 20:10-12; 39:13-16. Casey Bonincontro also testified that while those workers had "originally" come from a temp agency, at the time of the Accident the four workers were being paid directly by Sidelines and Sidelines no longer used the temp agency. ECF No. 78-5 at 73:3-74:22. This testimony shows that the other workers at the Accident are Sidelines employees as Sidelines directed their work, and Sidelines paid them directly. Any other people at the scene would be excluded by the Fellow Employee Exception.

in this Circuit rejected this argument, because this exclusion "is not explicitly or implicitly dependant upon [the employer] obtaining any alternate insurance coverage for employees" and there is "no language predicating the effect of the exclusion clause upon [the employer] ensuring its employees" have workers' compensation. *Occidental Fire & Cas. Co. of N. Carolina v. Reber Corp.*, No. 04-876, 2004 WL 1529176, at *3 (E.D. Pa. June 28, 2004). Sidelines' workers compensation coverage has no bearing on Zawacki's employment status.

Zawacki was a Sidelines employee and he was injured at work. The Employee Indemnification Exclusion applies and National does not have a duty to defend or indemnify Sidelines for Zawacki's injuries under this Exclusion.

### ii. Workers' Compensation Exclusion

National next argues that Zawacki's injuries are not covered because of the Workers' Compensation Exclusion. ECF No. 71 at 10. National argues that since this was an incident involving a Sidelines employee, the Accident would be covered under Pennsylvania's Workers' Compensation Act ("PWCA"). *Id.* In response, Defendants argue that this Exclusion cannot apply because Sidelines did not have workers' compensation coverage, and even if it did, there was no ruling of liability by the Workers' Compensation Board. ECF No. 73 at 5; ECF No. 79 at 6.[10]

The National Policy excludes coverage for "any obligation for which the insured may be held liable under any workers' compensation" law. ECF No. 69-1 at

---

[10] Defendants do not argue that the Workers' Compensation Exclusion is ambiguous. Courts in this Circuit commonly find similar exclusions to be unambiguous. *Frederick Mut. Ins. Co. v. Ahatov*, 274 F. Supp. 3d 273, 283 (E.D. Pa. 2017) (finding it unambiguous); *Landmark Motorcars*, 1998 WL 967375, at *5 (same).

11

20. The PWCA states that "[e]very employer shall be liable for compensation for personal injury to . . . each employe[e], by an injury in the course of his employment." 77 Pa. Stat. Ann. § 431. As stated above, Zawacki was a Sidelines employee in the scope of his work when he was injured so his injuries fall under the PWCA, and the Exclusion bars coverage.

      The National Policy and the PWCA both undercut Defendants' argument that this Exclusion cannot apply because Sidelines neither had workers compensation coverage nor a determination of liability by the Workers' Compensation Board. First, the Exclusion centers on whether an insured "*may be held liable* under any workers' compensation" law (ECF No. 69-1 at 20) (emphasis added); the Exclusion does not require that the insured is *actually* held liable, nor is there any requirement that the insured actually have workers' compensation coverage. Next, the PWCA "provides that worker's compensation is the exclusive remedy for injuries arising in the course of a worker's employment." *Rice Enterprises, LLC v. RSUI Indem. Co.*, 705 F. Supp. 3d 460, 468 (W.D. Pa. 2023). *See also* 77 Pa. Stat. Ann. § 481 ("The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employe[e]s"). Since workers' compensation is the "exclusive remedy," the PWCA, by design, does not allow for additional insurance recovery. *See also Ahatov*, 274 F. Supp. 3d at 285 (stating the contractor cannot "transform the benefits" of his policy "to provide workers' compensation coverage merely because he has ignored his responsibility to obtain proper coverage").

The Workers' Compensation Exclusion applies here to bar coverage for Sidelines because the Accident happened to a Sidelines employee acting in the course of his employment. Even though Sidelines apparently did not obtain workers' compensation coverage, in seeming violation of Pennsylvania law, that does not change the clear language of this Exclusion. Ultimately, the court cannot as a matter of public policy "'rewrite the insurance contract, under the guise of judicial interpretation, to expand the coverage beyond that as provided in the [insurance] policy.'" *Reber,* 2004 WL 1529176 at *3 (quoting *Guardian Life Ins. Co. v. Zerance*, 479 A.2d 949, 953 (Pa.1984)). Therefore, because Zawacki's injuries were on-the-job, they are excluded from coverage under the National Policy.

### b. Insurance Coverage for Defendant Yokim

National next argues that it does not have a duty to defend or indemnify Yokim[11] because the Fellow Employee Exclusion bars coverage as Yokim and Zawacki were fellow employees acting in the scope of their employment.[12] ECF No. 71 at 11. Defendants dispute that Yokim was a Sidelines employee because he was not paid through a W-2.[13] *See* ECF No. 82 at ¶¶ 32, 38-39.

---

[11] Coverage for Zawacki's injuries is barred under the Employee Indemnification and Workers' Compensation Exclusion. This Section discusses any separate liabilities and defense costs that Yokim may have.

[12] The First Underlying Complaint asserts that Yokim acted negligently in potentially driving the Freightliner, and in using the tourniquet on Zawacki's injuries. ECF No. 69-8 at 12, 13.

[13] Defendants Sidelines, Yokim, and the Bonincontros argue that Yokim is a named insured. ECF No. 73 at 4. Sidelines is the only Named Insured in the National Policy. ECF No. 69-1 at 17.

The National Policy has a Fellow Employee Exclusion which bars coverage for "bodily injury" to any "fellow employee . . . arising out of and in the course of the fellow employee's employment." ECF No. 69-1 at 21.[14]

As stated above, Zawacki was a Sidelines employee. Applying the same test here, Yokim was also Sidelines' employee at the time of the Accident. *Landmark Motorcars*, 1998 WL 967375, at *5 (stating that a key characteristic of an employer/employee relationship is the right to direct the way work is done). Sidelines directed Yokim's work because it was Sidelines (not Yokim) who was hired to cut trees, and Yokim only used Sidelines-owned equipment at Sidelines' worksites under the supervision of Sidelines managers. ECF No. 69 at ¶¶ 36, 40-41. Yokim's work cutting trees was part of Sidelines' regular business. *Id.* ¶ 2. Sidelines paid Yokim twice a month. *Id.* ¶ 39.

Defendants reiterate that Yokim cannot be a Sidelines employee because he was not paid through a W-2. *See* ECF No. 82 at ¶¶ 32, 38-39. However, how an individual is paid is "not determinative of whether the individual is an employee or independent contractor for other than tax purposes." *Landmark Motorcars*, 1998 WL 967375, at *5 (collecting Pennsylvania cases). Here, since Sidelines directed and controlled Yokim's work, he was an employee despite the payment method.

---

[14] Pennsylvania courts apply the plain text of similar fellow employee exclusions, finding them unambiguous. *See, e.g., Atl. States Ins. Co. v. Ne. Networking Sys. Inc.*, 893 A.2d 741, 748 (Pa. Super. Ct. 2006) (analyzing the plain text of the exclusion); *Viola v. Fireman's Fund Ins. Co.*, 965 F. Supp. 654, 664 (E.D. Pa. 1997) (same).

14

Since both Yokim and Zawacki were fellow Sidelines' employees acting in the course and scope of their employment,[15] the National Policy excludes coverage for Yokim for Zawacki's injuries and the allegations in the First Underlying Complaint.

### c. Insurance Coverage for the Bonincontros

National next seeks a declaration that it has no duty to defend or indemnify the Bonincontros because they are not "insureds." ECF No. 71 at 12-14. The Bonincontros respond that they are, in fact, "named and insured." ECF No. 84 at 3.

The National Policy defines an "insured" as (1) "you" (the Named Insured); (2) "anyone else while using with your permission a covered 'auto' you own, hire or borrow"; and "anyone liable for the conduct of an 'insured.'" ECF No. 69-1 at 19-20.

First, Sidelines is the only Named Insured. *Id.* at 17. The Bonincontros are not included under the "umbrella" of Sidelines even though they are the owners. *See Zenith Ins. Co. v. Newell*, 527 F. Supp. 3d 778, 790 (E.D. Pa. 2021), *judgment entered*, No. CV 20-3878, 2023 WL 8773635 (E.D. Pa. Dec. 19, 2023), *aff'd*, No. 24-1035, 2024 WL 4986938 (3d Cir. Dec. 5, 2024) (holding that company owner was not entitled to defense because company was the only named insured).

Second, neither of the Bonincontros were "using" the Freightliner at the time of the Accident. It is undisputed that Stephanie Bonincontro was not present at the Accident, ECF No. 69 at ¶ 23, and that Casey Bonincontro was standing outside of the Freightliner. *Id.* at ¶¶ 28-29. Pennsylvania courts looking at similar language

---

[15] Yokim and Zawacki were acting in the course of their employment with Sidelines at the time of the Accident because Zawacki was injured while they were both "performing assigned work" at a jobsite. *Viola*, 965 F.Supp. at 664 (citing *Forum Ins. Co. v. Allied Sec. Inc.*, 866 F.2d 80, 83 (3d Cir.1989)).

have held that "using" requires the person have physical control. *See, e.g. Belser v. Rockwood Cas. Ins. Co.,* 791 A.2d 1216, 1222 (Pa. Super. Ct. 2002) (holding that directing the driver from outside the car was not "using" because he "lack[ed] physical control"); *Erie Ins. Exch. v. Transamerica Ins. Co.*, 516 Pa. 574, 582 (Pa. 1987) (stating child was not "using" the car because she "unwitting[ly]" started it). Since Casey Bonincontro lacked physical control, he was not "using" it.[16]

Third, even if the Bonincontros were "liable for the conduct of an 'insured,'" there is no coverage for them under the National Policy. The First Underlying Complaint alleges that Sidelines and the Bonincontros are vicariously liable for each other's (and Yokim's) actions – essentially treating the Bonincontros and Sidelines as one-in-the-same. ECF No. 69-8 at ¶¶ 25-27. If the Bonincontros were indeed one-in-the-same as Sidelines, that would make them Zawacki's direct employers. The Employee Indemnification Exclusion applies "[w]hether the 'insured' may be liable as an employer" when the bodily injury is to the insured's

---

[16] National also seeks a declaratory judgment that is has no duty to indemnify Casey Bonincontro or Yokim for damages from applying a tree-bark tourniquet on Zawacki's injuries, which allegedly gave Zawacki an infection. ECF No. 69-8 at ¶ 12. Defendants do not address this argument. As stated above, there is no coverage under the National policy for Casey Bonincontro or Yokim, nor for Zawacki's injuries. Even if there was coverage, there would be no coverage for injuries from the tourniquet. To "result from" the "use" of a covered auto, there must be a "causal connection between the injuries and the instrumentality that causes the injuries." *Marks v. Utica First Ins. Co.*, No. CV 16-1671, 2017 WL 4867597, at *9 (W.D. Pa. Oct. 27, 2017) (finding relationship between separate auto accident while moving mobile equipment to be too attenuated for coverage under mobile equipment policy). The First Underlying Complaint alleges that the tourniquet itself caused injuries separate from the use of the Freightliner. National has no duty to indemnify Defendants for the tourniquet.

employee, and bars coverage for the employer. ECF No. 69-1 at 21. National does not have a duty to defend or indemnify the Bonincontros.[17]

### d. Indemnification for Punitive Damages

National argues it has no duty to indemnify Defendants for punitive damages in the Underlying Complaints. ECF No. 71 at 18. Defendants do not address this.

The Policy expressly excludes coverage for punitive damages. ECF No. 69-1 at 43 ("The insuring agreement is amended to provide that this insurance does not apply to any sums awarded as punitive damages."). *See also Legion Indem. Co. v. Carestate Ambulance, Inc.,* 152 F. Supp. 2d 707, 720 (E.D. Pa. 2001) (finding similar language to be "plainly-worded"); *Atl. Cas. Ins. Co. v. Zymblosky*, No. 1167 MDA 2016, 2017 WL 3017728, at *24 (Pa. Super. Ct. July 17, 2017) (stating that "[a]n insurer has no duty to cover an insured for punitive damages if the insurance policy unambiguously precludes indemnification for punitive damages"). National has no duty to indemnify the Defendants for punitive damages.

### e. Reimbursement of Defense Costs

---

[17] National is also seeking a declaratory judgment that it does not have to indemnify the Bonincontros for the allegations in the First Underlying Complaint that they "fraudulently perpetuated that Defendant Sidelines carried workers' compensation insurance" when it did not. ECF No. 69-8 at ¶ 19; ECF No. 71 at 16. The Bonincontros do not address this in their briefing. Even if the Bonincontros were insureds, fraudulent inducement is an intentional act. The National Policy's insuring agreement only covers bodily injury caused by an "accident," which necessitates an "unexpected and undesirable event," not an intentional act. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 589 Pa. 317, 333 (Pa. 2006) (citing Webster's II New College Dictionary 6 (2001)). *See also Allegheny Ludlum, LLC v. Liberty Mut. Ins. Co.*, 487 F. Supp. 3d 350, 361 (W.D. Pa. 2020), *aff'd*, 858 F. App'x 49 (3d Cir. 2021) ("unexpectedness being the key to the term [accident's] meaning"). National does not have a duty to indemnify the Bonincontros for any allegations of fraudulent inducement.

17

National seeks reimbursement of its defense costs to date in the Underlying Action. ECF No. 71 at 21. The Defendants did not address reimbursement.

Under Pennsylvania law, "an insurer is not entitled to be reimbursed for defense costs absent an express provision in the written insurance contract." *Zurich Am. Ins. Co. v. Century Steel Erectors Co., L.P.*, 613 F. Supp. 3d 896, 908 (W.D. Pa. 2020) (stating that the insurer was entitled to recoup defense costs because there was an express policy provision). *See also CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, L.L.P.*, 587 F. App'x 726, 731 (3d Cir. 2014) (permitting an insurer to recoup defense costs where the policy "expressly provide[d] for it").

National's Policy provides for the right to recoup defense costs if coverage is not available. ECF No. 69-1 at 38 ("If we initially defend an insured . . . but later determine that none of the claims . . . are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred"). National's own Policy, however, limits its right to reimbursement to only defense costs it incurred *after* it sent Sidelines a reservation of rights letter.[18] *Id. See also Associated Indus. Ins. Co., Inc. v. 101 W. Lehigh, LLC*, No. 23-CV-03736, 2024 WL 1585924, at *4 (E.D. Pa. Apr. 11, 2024) (permitting reimbursement under an identical provision).

---

[18] The full language reads: "If we initially defend an insured ('insured') or pay for an insured's ('insured's') defense but later determine that none of the claims ('claims'), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred. The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs." ECF No. 69-1 at 38.

Notably, none of the Parties included any information in their briefing or in their Statements of Facts about whether National sent Sidelines a reservation of rights letter or otherwise provided written notice that it was reserving its rights. As there is no coverage under the Policy, National is entitled to recover the costs it incurred defending the Defendants in the Underlying Action *only after* the date of its reservation of rights letter to Sidelines, assuming it sent one.

### V.     Conclusion

Therefore, for the reasons set forth herein, the Court finds that no genuine issues of material fact exist, and that National's Motion shall be GRANTED and the Defendants' Motion shall be DENIED. The Court finds that National does not have a duty to defend or indemnify the Defendants in the Underlying Lawsuits, and that it may withdraw its defense. An appropriate Order will be issued.

DATED this 20th day of December, 2024.

BY THE COURT:

s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge

CC:   All counsel of record, via ECF